IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 16, 2005

**STATE OF TENNESSEE v. GARY TIMOTHY LAWLER**

**Direct Appeal from the Criminal Court for Sumner County**
**No. 220-2004    Jane W. Wheatcraft, Judge**

---

**No. M2005-00177-CCA-R3-CD - Filed December 15, 2005**

---

The Defendant, Gary Timothy Lawler, pled guilty to one count of attempted aggravated sexual battery, a Class C felony; one count of attempted rape, a Class C felony; and one count of attempted sexual battery by an authority figure, a Class D felony. He received a sentence of seven years for each conviction. The sentence for the attempted aggravated sexual battery conviction was ordered to be served consecutively to the remaining two sentences, which were ordered to be served concurrently with each other. Thus, the total effective sentence is fourteen years. Defendant argues that the trial court erred in denying him alternative sentencing and requiring him to serve the entire sentence in the Tennessee Department of Correction. After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and ROBERT W. WEDEMEYER, JJ. joined.

John Pellegrin, Gallatin, Tennessee, for the appellant, Gary Timothy Lawler.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Charles Ronald Blanton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Background**

We begin by noting that the record before us does not include a transcript of the guilty plea proceedings. Therefore, the facts and circumstances of the offense as recited herein are developed from affidavits sworn to in support of the arrest warrants and testimony given at the sentencing hearing. Our *de novo* review of the circumstances of the offense is limited to that information contained in these documents. *See* T.C.A. § 40-35-210(b)(4) (2000). Normally, when presented

with an inadequate record on appeal, this Court must presume that the trial court ruled correctly. *See State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993). The appealing party bears the burden of preparing a complete and adequate record for the issues presented on appeal. *See* Tenn. R. App. P. 24(b). Nevertheless, we will review the record that is available in this appeal. As applicable, the victims are referred to by their initials rather than their full names.

On January 18, 2004, Defendant molested his (13) thirteen year old step-daughter, K.L.B., while they were moving to a new house. After drinking a beer and taking a vicodin pill, Defendant told the victim that they should take a nap. While K.L.B. attempted to fall asleep, Defendant pulled her pants off and stuck his hand inside of her panties, fondling and digitally penetrating her vagina. The victim later told authorities that she was afraid and that Defendant told her that if anything happened to him it would "mess things up." In a statement to police, Defendant admitted that he digitally penetrated and fondled K.L.B.'s vagina. He did not blame all of his actions on the alcohol and drugs, and told police that the incident occurred because of "lust of the flesh."

Defendant also molested his (12) twelve year old step-daughter, K.Z.B. An affidavit of complaint, sworn to on January 23, 2004, states that approximately three weeks prior, K.Z.B. was at home with Defendant watching television by herself in Defendant's bedroom. The victim, wearing night pants, had fallen asleep on Defendant's bed. Defendant entered the room, wearing only jeans, and laid down beside the victim on the bed. He then put her hand on his chest, pushed her hand onto his stomach, then pushed her hand onto his penis which was still inside his jeans. K.Z.B. fully awoke, said she had to go to the restroom, and did not return to the bedroom. When initially questioned about the incident, Defendant said that he could not remember if the incident actually happened. At the sentencing hearing, Defendant admitted to molesting both girls. He testified that he previously denied the incident with his younger step-daughter because he had already caused his wife and her children so much pain.

At the sentencing hearing, Defendant, then forty years old, testified that he gave his life to Christ at the age of eight years old. After a lapse in judgment that resulted in drinking and drug use, Defendant was "born again" when he was nineteen years old. Shortly after, Defendant began mission work in various parts of the world, including countries from northern Europe to the west coast of Africa. Defendant worked as a missionary for several years. He testified that during that time he stepped away from alcohol and women, and he did not have a problem with pornography.

Prior to meeting his wife, and after returning to the church from his mission work, Defendant experienced a period of disenchantment with God and religion. He stated that he stepped away from God for about seven years and dealt with a pornography problem during that time. He tried to get help for his pornography problem, but he did not feel there was anyone in his "church situation" who knew how to address the problem. Defendant admitted that during this time period he engaged in sexual relations with one of his stepsisters. At the time of the sexual encounter, Defendant and his stepsister were in their middle to late twenties.

Defendant testified that during the sixteen months prior to meeting his wife, he quit pornography completely and was able to stay away from it for that period of time. Defendant testified that after the molestation of his stepchildren, he sought help from a Christian counselor, Bob Ridley, and a court-ordered counselor, John Brogden. He stated that he gets up early in the morning and watches people on television preaching the "good word," and he keeps notebooks and "takes notes on things that people are saying about how to get yourself back out of trouble." Defendant testified that he is trying to put God in his life, so that he does not ever offend again because he does not want to hurt anybody. Defendant admitted on cross-examination that he was involved in church and "in the Word" when he molested his step-daughters. He stated that he tried to get help for his problems from his pastor, but his pastor was dealing with the same issues at that time.

In October 2004, John Brogden conducted a psychosexual evaluation of Defendant. Mr. Brogden has a Master's degree in social work and served on the Board of Sex Offender Treatment Providers for seven and a half years. Mr. Brogden testified that Defendant came to him for evaluation. He conducted a series of tests on Defendant, and then he referred him for polygraph verification of his sexual history. Mr. Brogden reported that there were significant differences between his own initial evaluation and the polygraph verification. Specifically, in the initial interview, Defendant minimized the sexual abuse against his step-daughters and essentially denied or could not remember molesting his younger step-daughter. During the polygraph, however, Defendant admitted to having sexual thoughts about his step-daughters prior to molesting them, and he further admitted to masturbating to fantasies about his step-daughters. Although he previously denied molesting his youngest step-daughter, he admitted to trying to get her to masturbate him. He also stated that on several occasions he gave the girls massages during which he fondled both girls' breasts and buttocks. In addition to fantasizing about his step-daughters, Defendant admitted to sexual fantasies about his step-daughter's friends who were also underage girls.

The interview during the polygraph revealed a more extensive history of sexual deviance, including voyeurism, use of pornography, and fantasies about minor female children. Defendant admitted to a history of "peeping" on women, beginning with family members in adolescence and then progressively victimizing women in the community. As a child, he drilled a hole in his bedroom floor in order to peep on his three step-sisters. He admitted to peeping on at least 12 women while in his twenties. He admitted to peeping on his step-daughters. He stated that he masturbated during these "peeping" sessions, and these activities continued until the time of his arrest in January 2004. Mr. Brogden testified to his opinion that based on his history of sexual deviance, Defendant is at a substantial risk to offend again. Mr. Brogden also testified regarding a report submitted by Defendant's Christian counselor, stating that the counselor omitted the breadth and scope of Defendant's deviant history and seemed to focus only on Defendant's use of pornography. A copy of the polygraphed interview and a report containing Mr. Brogden's evaluations were admitted into evidence.

Reverend Mike Miller testified that he attended Trinity Assembly in Algood, Tennessee, and stated that he ran the church's Overcomers Outreach program. He explained that the program was for people with life controlling issues. Reverend Miller testified that he knew Defendant because

Defendant started attending the program meetings in March 2004. He stated that the meetings are Christian meetings, held weekly on Monday evenings. Reverend Miller testified that Defendant far exceeded what was asked of him as a participant in the program. He described Defendant as open, honest, sincere, and a man of his word. He agreed that Defendant recognizes his problems and will do whatever is possible to deal with those issues. He stated that Defendant is extremely regretful for what happened and very sincere about correcting the problem.

Mrs. Dena Lawler, Defendant's wife, submitted a letter to the court attesting to why Defendant should be sentenced to probation. When asked at the sentencing hearing how her children had been affected by the incident, Mrs. Lawler testified that her children's trust had been tremendously affected but that she believes that the strength and understanding she sees in her children was instilled by their father and is a result of his love. She stated that she loves her husband and forgives him for what he has done. She stated that she does not want to reunite her family, but the best outcome would be a situation where Defendant would be able to provide for them in whatever way possible. She stated that she was pregnant with a fifth child due in two weeks and a prison sentence would pose a severe hardship on the family. She stated that all of her children were in counseling with the exception of the youngest who is not old enough to understand what has happened.

In addition to submitting a letter to the court, Gary Lawler, the Defendant's father, testified that he has had daily contact with Defendant since Defendant molested his step-daughters. He stated that Defendant has repeatedly expressed remorse and talked daily about how much he misses his children. He feels that Defendant has shown that he will do whatever is necessary to avoid offending again. As evidence of this, Defendant's father referred to the fact that after being held in jail for thirty days, Defendant immediately became employed, found a church with a help group, and received counseling for his problems. On cross-examination, Mr. Lawler admitted that until the time of Defendant's arrest, he had no idea that his son had a penchant for sexually deviant behavior.

There was discussion at the sentencing hearing as to whether Defendant violated the court's order to stay away from his children. Nashoba Ishcomer, a co-worker, testified that he had seen Defendant with his children and his wife picking up Defendant's paycheck. This incident allegedly occurred after the court issued an order for Defendant to stay away from the children. John Bock, Defendant's employer, testified that he had never seen Defendant pick up his check with his children in tow. Dena Lawler testified that Defendant had done nothing to violate the court's order. In fact, she stated that she had done everything in her power to make sure the order was not violated. Specifically, she stated that there was no occasion where she and her husband took the children with them to pick up her husband's paycheck. She stated that Defendant had not physically seen his children since the last court appearance.

## II. Standard of Review

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the

determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2005). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the Defendant." *Id*. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo. Id*. If appellate review reflects that the trial court properly considered all relevant factors and that its findings of fact are adequately supported by the record, this court must affirm the sentence, even if we would have preferred a different result. *State v. Bolling*, 75 S.W.3d 418, 420 (Tenn. Crim. App. 2001).

In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant made on his own behalf; and (7) the potential for rehabilitation or treatment. *State v. Bolling*, 75 S.W.3d at 420; *see* T.C.A. § 40-35-210(a), (b)(1)-(6) (2005).

## III. Analysis

Defendant argues that the trial court abused its discretion in denying him probation or other alternative sentencing and improperly imposed a sentence of total confinement because the court based its decision solely on the circumstances of the offense. The Defendant points out that to deny a defendant relief solely on the circumstances of the offense, those circumstances must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *State v. Hartley*, 818 S.W.2d 370, 374-375 (Tenn. Crim. App. 1991); *State v. Smith*, 735 S.W.2d 859, 864-865 (Tenn. Crim. App. 1987), *overruled on other grounds by State v. Nunley*, 22 S.W.3d 282 (Tenn. Crim. App. 1999), *perm. to appeal denied* (Tenn. Feb. 7, 2000). Defendant seems to imply that his offenses do not rise to the level of such reprehensible behavior. He notes his lack of a prior record and suggests that there is sufficient evidence to satisfy the statutory presumption that Defendant is a favorable candidate for probation or alternative sentencing.

Somewhat inconsistently, Defendant goes on to argue that the trial court did not weigh the relevant factors in determining his qualification for probation. Rather, he says the court based its decision on incorrect perceptions that Defendant was untruthful and lacked remorse for his actions. He also argues that although the court named deterrence as a factor in denying probation, the record is devoid of any proof that denying Defendant probation would deter similar crimes in the trial court's jurisdiction.

The determination of whether a defendant is entitled to alternative sentencing or probation relies on different burdens of proof. *See State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App.

1996). At the time of the sentencing in this case, a defendant was eligible for alternative sentencing if the sentence received by the defendant was eight years or less, subject to some statutory exclusions. T.C.A. § 40-35-303(a) (2005). (The length of a sentence for consideration of alternative sentencing was increased to ten years in subsection (a), effective June 7, 2005). Tenn. Code Ann. § 40-35-303(a)(1989 & Supp. 2005). A defendant who is a standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. T.C.A. § 40-35-102(b)(6) (2005). Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *see also* T.C.A. § 40-35-210.

By contrast, it is the defendant who has the burden of establishing his suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim App. 1995), *perm to appeal denied* (Tenn. 1995) (*citing State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). In determining whether to grant or deny full probation, the trial court may consider the circumstances of the offense; the defendant's criminal record; background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. *Parker*, 932 S.W.2d at 958.

When determining whether incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct; (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses; or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169 (*citing* T.C.A. § 40-35-103(1)(A)-(C) (1989)). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. *Id*. §§ 40-35-103(5), -210(b)(5); *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996).

In calculating the sentence for Class C and D felony convictions, the presumptive sentence is the statutory minimum in the range if there are no enhancement or mitigating factors. *See* T.C.A. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum in that range, but still within the range. T.C.A. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. T.C.A. § 40-35-210(e).

The sentence must then be reduced as appropriate within the range by any weight assigned to the mitigating factors present. *Id.* The sentence range for a Range I offender for a Class C felony is not less than three (3) years nor more than six (6) years. T.C.A. § 40-35-112(a)(3) (1989). The sentence range for a Range I offender for a Class D felony is not less than two (2) years nor more than four (4) years. T.C.A. § 40-35-112(a)(4).

At the sentencing hearing, the trial court concluded:

In preparation for this sentence hearing today, the Court read the presentence report. I have read the report of Mr. Brogden, as well as the results of the polygraph test. I have also read and considered all of the letters that have been submitted to me on behalf of Mr. Lawler, and I appreciate those who took the time to write those. The Court is familiar with the principles of sentencing that are set out in Tennessee code. I understand the provisions of 40-35-102 and -103, and I understand all of the sentencing considerations that I have to apply.

This defendant has a very long history of sexual deviancy. He has an extensive use of alcohol beginning at age 13. He has used some illegal drugs. He has had, according to the report of Mr. Brogden, a lengthy history of paraphilias. He engaged in significant deception during the evaluation process. According to the expert, Mr. Brogden, he represents an elevated risk to reoffend sexually as he has a history of multiple victims over time with multiple incidents. And that is what is of great concern to the court. This is a defendant who has a long history of deviant behavior.

And the fact of the matter is that as much as he would like to say that, you know, he hopes his children emerge from this stronger, children never, ever get over being sexually abused. It will affect them the rest of their lives. It affects their self-esteem; it affects their ability to trust other people; it's probably the worst kind of crime aside from murder. So the court takes it very seriously.

The Court has to think in terms of punishment. The Court also has to think in terms of rehabilitation. I also think in terms of deterrence. But given the fact that this defendant is at an elevated risk due to the fact that he had engaged in this behavior over such a long period of time, the court feels that a community-based sentence should not be granted in this case.

[Defense counsel] asked what more [Defendant] could have done. He could have been up-front immediately with Mr. Brogden. He could have gotten sex offender specific counseling. I don't think that he truly understands the harm that he has caused.

According to Mr. Brogden, [Defendant] could not describe in any specific terms the nature of harm inflicted upon these two children by a trusted family member. He

concedes that their trust may have been harmed.  Well, it has been.  He seemed more concerned about what was going to happen to him than the trauma they had experienced.

One of the things that I look to in deciding how to punish a sex offender is whether or not they [sic] have victim empathy.  I think that in this case that is lacking.  He stated, according to Mr. Brogden, the whole thing was a big misunderstanding and Defendant seemingly failed to grasp the significance of the matter.

The fact of the matter is this is extremely significant and it is extremely tragic for this entire family, and the Court understands that.  The Court also understands that by putting him in the penitentiary I am putting a great burden on the family, but those are choices that were made by Mr. Lawler.  This will be a 14-year sentence to serve in the Tennessee Department of Corrections [sic]."

We note again that the transcript of the guilty plea hearing is not included in the record and therefore our review is limited to those materials now before this Court.  After a thorough review of the available record, we conclude that the trial court considered the sentencing principles and all relevant factors and circumstances.  As such, our review of the record is *de novo* with a presumption of correctness.  We do not find that the trial court based its decision solely on the circumstances of the offense, nor do we find that the court based its decision solely on the need for deterrence.  We believe the trial judge properly denied probation and any other form of alternative sentencing based on the factors relevant to a determination of whether a defendant is a proper candidate for probation.  Specifically, the trial judge concluded that Defendant's untruthfulness, sexually deviant history, lack of remorse or understanding of the repercussions of his actions, and the likelihood that he will offend again, justified a denial of probation.  We conclude that the Defendant has not met the burden of showing that the trial court improperly denied him probation or that probation would be in his best interest or that of the public.  As to other forms of alternative sentencing, the record reflects that the trial court properly concluded that the State met its burden to overcome the presumption of entitlement to alternative sentencing.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-8-